# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN P. BRENTON | : | |
| Plaintiff | : | CIVIL ACTION NO. 17-89 |
| v. | : | (JUDGE MANNION) |
| F.M. KIRBY CENTER FOR THE PERFORMING ARTS | : | |
| | : | |
| Defendant | | |

## MEMORANDUM

Pending before the court is the defendant's motion for summary judgment. (Doc. 29). Upon review of the defendant's motion and related materials, the motion will be **GRANTED** as further discussed herein.

### I. PROCEDURAL HISTORY

The plaintiff, Joan P. Brenton ("Brenton"), filed the instant action on January 17, 2017, in which she raises several claims relating to her employment with the defendant, F.M. Kirby Center for the Performing Arts ("Kirby"). (Doc. 1). Kirby filed a motion for judgment on the pleadings (Doc. 9) and a brief in support (Doc. 10) on March 27, 2017. Brenton filed an amended complaint on June 29, 2017. (Doc. 19). Brenton has alleged the following claims against Kirby: (1) retaliation and discrimination under section 510 of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1140; and (2) breach of fiduciary duty under section 404 of ERISA, 29 U.S.C. §1104.

Then, Kirby filed a new motion for judgment on the pleadings (Doc. 22) and brief in support (Doc. 23) on July 3, 2017. Following discovery on November 28, 2017, Kirby filed the pending motion for summary judgment (Doc. 29), along with a brief in support (Doc. 31), and a statement of material facts (Doc. 30). Brenton filed a brief in opposition (Doc. 38) to Kirby's motion for summary judgment on January 19, 2018, along with a response to Kirby's statement of material facts (Doc. 39). On February 2, 2018, Kirby filed a reply brief in support of its motion for summary judgment. (Doc. 40). On July 18, 2018, Kirby's motion for judgment on the pleadings was dismissed as superseded by Kirby's pending motion for summary judgment. (Doc. 43). The Kirby's motion for summary judgment is now ripe for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D.Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial

burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Federal Rule of Civil Procedure 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

### III. MATERIAL FACTS

The following are the undisputed facts material to resolving the pending motion for summary judgment.[1] Brenton commenced her employment with the Kirby in July of 2007. At the time of her separation from the Kirby on July 1, 2016, Brenton was the Director of Membership and Corporate Giving. The Kirby's Development Department ("Department") had three employees—the

---

[1] The relevant facts are taken from the pleadings (Doc. 8; Doc. 19; Doc. 21), Kirby's statement of facts (Doc. 30), and Brenton's statement of facts (Doc. 39). Any material facts that remain in dispute are noted as such.

Director of Development, Brenton, and an assistant. On May 13, 2016, management informed Brenton and the assistant in the Department that the Kirby was consolidating their positions because the Kirby needed to cut thirty-thousand dollars from the budget. Brenton and the assistant in the Department were invited to apply for the new consolidated position, and the Kirby interviewed Brenton for the job. Ultimately, the Kirby did not select Brenton for the newly created position.

During her employment, Brenton was a participant in the 403(B)-plan ("Plan") offered by the Kirby to its employees. In October 2015, the Kirby's Director of Finance informed Brenton that money from a former employee's Plan account had been commingled with her Plan account.[2] The Kirby employed a third-party vendor ("Employee Fiduciary") to segregate the two Plan accounts, rebuild the accounts to determine how much of the money belonged to both Brenton and the former employee, and ensure the accounts were made whole. Then, a sum of money was withdrawn from Brenton's Plan account without Brenton's permission. Brenton requested and received a copy of the Plan documents from the Kirby. Brenton also consulted her accountant to help investigate the issue with her Plan account. Later, during a conference

---

[2] The assistant from the Kirby's Development Department did not have any issues with her 403(B) Plan account.

call, the Employee Fiduciary informed Brenton that her Plan account was understated by about eight-hundred dollars.

The parties dispute whether Brenton and her accountant were "comfortable" with the account restoration performed by the Employee Fiduciary. However, in her deposition, Brenton states that she told her accountant she was "comfortable" and that she was satisfied with the amount of money that the Employee Fiduciary determined was owed to Brenton. (Doc. 30-2, at 56-59). Nevertheless, the Kirby eventually made Brenton's Plan account whole.

**IV.    DISCUSSION**

    **A. Retaliation & Discrimination Claim**

Under section 510 of ERISA it is unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he [or she] is entitled under the provisions of an employee benefit plan," … or "because he [or she] has given information . . . in any inquiry or proceeding relating to [ERISA] . . ." 29 U.S.C. §1140.

> The legal standard in §510 cases is very clear. To recover, a plaintiff must demonstrate that the defendant had the ["specific intent"] to violate § 510. This requires the plaintiff to show that "the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits." The plaintiff may use both direct and circumstantial evidence to

> establish specific intent, but when the plaintiff offers no direct evidence that a violation of [§] [sic] 510 has occurred, the court applies a shifting burdens analysis, similar to that applied in Title VII employment discrimination claims. In this burden-shifting analysis, the plaintiff must first establish a prima facie case by showing: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." If the plaintiff is successful in demonstrating her [or his] prima facie case, the burden then shifts to the defendant-employer, who must articulate a legitimate, nondiscriminatory reason for the prohibited conduct. If the employer carries its burden, the plaintiff then must persuade the court by a preponderance of the evidence that the employer's legitimate reason is pretextual.

*DiFederico v. Rolm Co.*, 201 F.3d 200, 204-05 (3d Cir. 2000) (citations omitted).

In her brief in opposition to Kirby's present motion, Brenton incorrectly cites the elements of a Title VII retaliation claim as being enough to establish her *prima facie* case under ERISA §510. (Doc. 38, at 13). "[T]he Third Circuit has established a different standard for a [§510] plaintiff's *prima facie* case than that used in Title VII cases." *DiFederico v. Rolm Co.*, No. 94-CV-6901, 1995 WL 710561 at *4 (E.D.Pa. Nov. 30, 1995), *aff'd*, 201 F.3d 200 (3d Cir. 2000). The parallel between Title VII and ERISA §510 discrimination cases that is often referenced by courts is merely a procedural one. As explained above, it is after an ERISA-§510 plaintiff relies on circumstantial evidence and successfully establish their *prima facie* case that the court employs a burden-shifting analysis that is most often associated with Title VII claims. *DiFederico,*

201 F.3d at 205. The substantive elements of each claim are not the same. Establishing a *prima facie* case in a Title VII claim requires a "causal connection" between the participation in a protected activity and the adverse employment action. *Remp v. Alcon Laboratories, Inc.*, 701 Fed.Appx. 103, 107 (3d Cir. 2017) (citation omitted). Whereas, in an ERISA §510 claim, the plaintiff must establish that the employer had the "specific intent" to violate §510. *DiFederico*, 201 F.3d at 204-05.

Brenton offers no direct evidence that the Kirby specifically intended to interfere with her attainment of ERISA benefits. Also, Brenton provides no direct evidence of any right or benefit under ERISA that was hindered with by her termination. Brenton does allege that she had difficulty obtaining her Plan documents, as well as, some money, which allegedly belonged in her Plan account. Nevertheless, Brenton admits that she received the documents and money before her termination. (Doc. 39, at 21). Brenton also mentions that the Kirby was notoriously late in depositing employees' funds into their benefits accounts. However, once again, Brenton admits that the Kirby began investigating this issue before her termination. (Doc. 39, at 22). Thus, it is unclear what pension eligibility or additional benefits that Brenton is alleging the Kirby intended to interfere with when they terminated her employment. At best, Brenton's argument is construed to assert that her termination was

pretextual essentially because she "started asking questions" and providing information about her Plan account. But, without the circumstantial evidence to support a *prima facie* case under §510, Brenton fails to advance her case to the burden-shifting analysis.

After hearing a simple summary of the facts surrounding the issue with Brenton's Plan, no reasonable jury could conclude that the Kirby did anything other than try to help remedy an accident. First, it was the Kirby, through a third party, who initially discovered that Brenton's Plan account had been commingled with the account of a former employee. Then, the Kirby relayed the issue to Brenton. Next, a third-party vendor, Employee Fiduciary, was tasked with fixing the problem by determining that both Plan accounts had the proper balance. While too much money was withdrawn from Brenton's account, ultimately, the Employee Fiduciary investigated the issue, and both Brenton and her accountant agreed to accept the refund proposed by the Employee Fiduciary[3]. Also, Brenton admits that the Kirby provided her with a copy of the Plan documents and that her account was made whole before her termination. Now, to establish a *prima facie* case under §510, Brenton must

---

[3] While the parties contest whether Brenton and her accountant were "comfortable" with the proposed resolution, it is undisputed that Brenton accepted the Employee Fiduciary's proposal and that Brenton's Plan account was made whole.

allege that despite these facts, the Kirby "made a conscious decision to interfere with [Brenton's] attainment of pension eligibility or additional benefits." *DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 523 (3d Cir. 1997) (citing *Gavalik v. Continental Can Co.*, 812 F.2d 834, 860 (3d Cir. 1987)).

It is impossible to surmise how these facts can establish that the Kirby had the specific intent to violate §510 when they terminated Brenton. Moreover, there is no evidence in the record to support Brenton's allegation—that she was targeted for termination because of her benefits eligibility. Because Brenton has failed to prove the Kirby specifically intended to violate §510 through direct or circumstantial evidence and was unable to state any additional eligibility or benefits that the Kirby intended to interfere with, she has failed to establish a *prima facie* case under §510 of ERISA.

Considering the preceding, summary judgment shall be entered in Kirby's favor concerning the §510 claim. As such, the issue regarding monetary damages relating to Brenton's §510 claim need not be addressed.

### B. Breach of Fiduciary Duty Claim

Brenton asserts that the Kirby was a fiduciary of the Plan under ERISA and that they breached their fiduciary duty to Brenton. Brenton's claim seeks

to utilize the enforcement provisions in 29 U.S.C. §1132(a)(3), to remedy an alleged violation of the fiduciary duties imposed by 29 U.S.C. §1104. Additionally, a generous reading of Brenton's amended complaint and brief in opposition to the present motion indicates that Brenton also seeks to utilize the enforcement provisions in 29 U.S.C. §1132(a)(2), to find relief under 29 U.S.C. §1109. When considering a breach of fiduciary duty claim, the distinction between these two enforcement provisions is the type of damages that the parties can obtain. While the parties highly contest the issue of damages, it does not become a relevant inquiry until Brenton establishes a *prima facie* breach of fiduciary duty claim.

> Brenton alleges that the Kirby breached its fiduciary duty,
>
> (a) by depositing another participant's monies into Brenton's 403(b) account;
> (b) by transferring monies out of Brenton's account without providing Brenton with an appropriate explanation or accounting and without her authorization;
> (c) by failing to provide a prompt accounting and requested information after transferring the monies out of Brenton's account; and
> (d) by terminating Brenton because she exercised her rights under the 403(b) Plan and ERISA and/or because of her inquiries, opposition and/or complaints about ERISA violations after Defendant engaged in unlawful actions related to her 403(b) account.

(Doc. 19, at 10). To support a claim for breach of fiduciary duty, Brenton must prove that the Kirby (a) was an ERISA fiduciary, (b) breached an ERISA-

imposed duty, and (c) that breach caused a loss to the Plan. *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007). Even if the Kirby is an ERISA fiduciary that breached an ERISA-imposed duty, Brenton fails to establish that any of her breach theories caused a loss to Brenton's Plan account. The only periods when Brenton alleges that her Plan account sustained a loss was when the Kirby made late contributions and when approximately eight-hundred dollars was overdrawn from Brenton's Plan account.

Brenton does not allege a late contribution claim against the Kirby. Also, none of her theories of breach alleged in her amended complaint discuss making late contributions to Brenton's account. In her papers, Brenton briefly mentions that she and her accountant told the Kirby they were frequently late with contributions to her Plan account in the past. (Doc. 19, at 4-5). But, her allegations are nothing more than conclusory with no evidence supporting this claim. Also, Brenton admits that the Kirby investigated the late contributions and then makes no further mention of any continuing issue. Thus, the court finds that no jury could reasonably conclude that the Kirby breached its fiduciary duty and caused a loss to the Plan by making late contribution payments. Considering Brenton's admission that the Kirby investigated this issue and her failure to allege an ongoing problem, the court finds that granting leave so that Brenton can amend her complaint would be futile.

Brenton's only remaining allegation of a loss to the Plan is when funds were overdrawn from Brenton's Plan account. Even viewing the facts in the light most favorable to Brenton, she fails to establish enough evidence that a reasonable jury might conclude that this eight-hundred-dollar withdrawal from her Plan account was anything more than a mistake by the Employee Fiduciary, who was attempting to restore the account to its proper balance. Considering Brenton eventually reached an agreement with the Employee Fiduciary regarding the amount of money that was overdrawn from Brenton's account, it is unclear how Brenton believes that the Kirby breached a fiduciary duty and caused a loss to the Plan. Nevertheless, when a court needs to fill in the details of ERISA fiduciary duties or decide how to review fiduciary actions, it should turn to trust law. *See Leckey*, 501 F.3d at 223 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-12 (1989)).

In *Leckey*, the Third Circuit looked to a section of the Second Restatement of Torts to explain the degree of fault required to establish a trustee's breach of fiduciary duty. *Id*. "Ordinarily a trustee does not commit a breach of trust if he does not intentionally or negligently do what he ought not to do or fail to do what he ought to do . . .[h]e may, however, commit a breach of trust where he is not personally at fault, as where he acts under a mistake of law or fact . . . ." *Leckey*, 501 F.3d at 224 (quoting Restatement (Second) of

Torts § 201 cmt. a). For the mistake to rise to the level of a breach, it must be a "mistake as to the extent of [the trustee's] powers." *Leckey*, 501 F.3d at 224 (quoting Restatement (Second) of Torts § 201 cmt. b). In contrast,

> [w]hen the question whether the trustee has committed a breach of trust depends not upon the extent of his powers and duties, but upon whether he has acted with proper care or caution, the mere fact that he has made a mistake of fact or law in the exercise of his powers or performance of his duties does not render him liable for breach of trust. In such a case he is liable for breach of trust if he is negligent, but not if he acts with proper care and caution.

*Leckey*, 501 F.3d at 224 (quoting Restatement (Second) of Torts § 201 cmt. c).

Brenton does not allege, and no reasonable jury could conclude that the Kirby made a "mistake as to the extent of [its] powers," by directing that money be transferred out of Brenton's Plan account to reconstruct both employee's Plan accounts. Brenton asks us to find that a loss to the Plan occurred merely because the balance of her Plan account was temporarily below its proper balance. *See* (Doc. 38, at 33) ("Moreover, Brenton's account sustained a loss when on October 30, 2015, the Kirby directed that too much money be transferred out of it."). However, the most generous reading of the facts would not allow a reasonable fact-finder to find that this withdrawal of excess funds rose to the level of negligence. Thus, the court finds that

Brenton has failed to sufficiently establish a *prima facie* claim of breach of fiduciary duty by failing to establish a loss to the Plan.

Considering the foregoing, summary judgment shall be entered in Kirby's favor concerning the breach of fiduciary duty claim. As such, the issue regarding monetary damages relating to Brenton's breach of fiduciary duty claim need not be addressed.

## V. CONCLUSION

Based on the preceding, Kirby's motion for summary judgment shall be **GRANTED**. An appropriate order shall issue.

s/ *Malachy E. Mannion*

**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 30, 2019**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-89-01.docx